# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TONY J. REID, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 24-2186 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| ALEJANDRO N. MAYORKAS, | : | | |
| *Secretary of the Department of Homeland Security*, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I.  INTRODUCTION

Federal law codified at 46 U.S.C. § 7511 instructs the United States Coast Guard to deny merchant mariner licenses and credentials to individuals convicted of certain sex offenses. Plaintiffs sued the Department of Homeland Security and the Coast Guard, claiming that the Coast Guard incorrectly applied this provision to their requests to renew their Merchant Mariner Credentials ("MMCs") in violation of the Administrative Procedure Act ("APA"), the Merchant Marine Act of 1936, and the Fifth Amendment Due Process Clause.  Plaintiffs move for a temporary restraining order and preliminary injunction suspending this practice.  The Court denies Plaintiffs' motion because they do not demonstrate a likelihood of success, and the public interest weighs against injunctive relief.

## II.  BACKGROUND

### A.  Statutory Background

"To legally work aboard a United States merchant marine vessel, individuals must receive [an MMC] from the National Maritime Center ('NMC'), the licensing authority of the United States Coast Guard."  *Clifford v. U.S. Coast Guard*, 915 F. Supp. 2d 299, 303 (E.D.N.Y. 2013) (citing 46 C.F.R. §§ 10.209, 10.225).  Federal law provides for the issuance of licenses, certificates, and documents to merchant seamen, *see* 46 U.S.C. § 7101(c), establishes general requirements for issuance of those documents, *see id.* § 7101(e), and defines associated procedures, *see id.* §§ 7501–11.  A license "is valid for a 5-year period and may be renewed for additional 5-year periods."  *Id.* § 7106(a); *see also* 46 C.F.R. § 10.205(a) ("An MMC is valid for a term of 5 years from the date of issuance.").  An MMC "is a credential combining the elements of the merchant mariner's document (MMD), merchant mariner's license (license), and certificate of registry (COR)," as well as international training and certification standards.  46 C.F.R. § 10.201(a).

In response to reports of sexual assault and sexual harassment within the U.S. Merchant Marine Academy, Congress recognized "the need for systemic maritime industry mechanisms for reporting and investigating claims of sexual assault and sexual harassment, as well as mechanisms for punishing offenders."  H.R. Rep. No. 117-282, at 43 (2022).  Among other changes, H.R. 6865, 117th Cong. (2022), proposed provisions to "ban[ ] individuals convicted of sexual assault from receiving a merchant mariner credential and revoke[ ] the credentials of those convicted of sexual assault in the previous ten years."  H.R. Rep. No. 117-282, at 43.  Congress soon enacted these measures in the James M. Inhofe National Defense Authorization Act for

Fiscal Year 2023 ("NDAA").  *See* §§ 11601–11, Pub. L. No. 117-263, 136 Stat. 2395, 4145–56 (2022).  Two of those provisions are relevant here.

First, Congress barred the Coast Guard from issuing credentials—including MMCs—to individuals convicted of certain sex offenses.  "A license, certificate of registry, or merchant mariner's document authorized to be issued under this part shall be denied to an individual who has been convicted of a sexual offense prohibited under" either "chapter 109A of title 18" or "a substantially similar offense under State, local, or Tribal law."  *Id.* § 11602 (codified at 46 U.S.C. § 7511).  Chapter 109A of Title 18 comprises provisions criminalizing sexual abuse, *see* 18 U.S.C. § 2242; aggravated sexual abuse, *see id.* § 2241; sexual abuse of a minor, a ward, or an individual in Federal custody, *see id.* § 2243; and abusive sexual contact, *see id.* § 2244.[1]

Second, Congress provided a process for revocation of credentials when an individual is the subject of an "official finding" of sexual harassment or sexual assault.  *See* NDAA § 11603 (codified at 46 U.S.C. § 7704a).  An "official finding" includes "a legal proceeding or agency finding or decision that determines the individual committed sexual harassment or sexual assault in violation of any Federal, State, local, or Tribal law or regulation."  46 U.S.C. § 7704a(c)(1)(A).  It also includes a finding by the Coast Guard following an investigation.  *See id.* § 7704(c)(1)(B).  If it is shown at a hearing that an individual is the subject of an official finding of sexual harassment within the previous five years, the individual's credentials "may be suspended or revoked."  *Id.* § 7704(a).  Where the finding includes sexual assault and occurred within the past 10 years, the individual's credentials "shall be revoked."  *Id.* § 7704(b).

---

[1] The mandatory bar found in § 7511 does not apply to individuals convicted of abusive sexual contact under 18 U.S.C. § 2244(b) or a substantially similar offense under State, local, or Tribal law.  *See* 46 U.S.C. § 7511(b).  Instead, a license, certificate of registry, or merchant mariner's document "may" be denied when that conviction occurred "within 5 years before applying for the license."  *Id.*

**B. Factual Background**

On May 23, 2023, the Coast Guard issued Policy Letter No. 03-23 ("Policy Letter") to the National Maritime Center to "provide[ ] guidance on safety and suitability determinations for applicants for [MMCs] with convictions for sexual assault." Ex. 1 to Pls.' Mot. for TRO and Prelim. Inj. at 1 ("Pls.' Mot."), ECF No. 12. The letter explains that "[t]he Coast Guard will use this policy when evaluating applications for a MMC," *id.* at 35, and provides the Coast Guard's interpretation of § 7511, *see id.* at 36–37.[2] The policy letter explains that it "is not a substitute for applicable legal requirements, nor is it itself a regulation." *Id.* at 37. The letter states the "guidance represents the Coast Guard's current thinking on this topic" and is intended to assist "in applying statutory and regulatory requirements." *Id.*

Plaintiffs are three merchant mariners whose MMC renewal applications were denied due to prior sexual assault convictions. Plaintiff Tony J. Reid was first issued an MMC in 2018. *See* Reid Decl. at 50, ECF No. 12. In 2023, the Coast Guard denied his application to renew his MMC, citing § 7511(a) and a "1996 Washington state conviction for the rape of a child." Ex. 2 to Pls.' Mot. at 40, ECF No. 12. The Coast Guard explained that "[t]he law prevents issuance of an MMC to individuals with certain sexual offense convictions." *Id.* Plaintiff Brandon A. Phillips received an MMC in 2014 and applied for a renewal in 2024. Phillips Decl. at 52, ECF No. 12. The Coast Guard denied that application "due to his 1999 conviction for Aggravated Criminal Sexual Assault in Illinois." Ex. 2 to Pls.' Mot. at 42. Plaintiff Charlie Boagni Jr. was issued an MMC in 2003. Boagni Decl. at 54, ECF No. 12. The Coast Guard denied his renewal application in 2023 based on a 1992 conviction for "Carnal Knowledge of a Juvenile," Ex. 2 to

---

[2] Because Plaintiffs included their exhibits in a single document, and those exhibits contain their own page numbers, the Court refers to the ECF-generated page numbers rather than the page numbers on individual documents contained in ECF No. 12.

Pls.' Mot. at 44, which he describes as "consensual sex with a seventeen-year-old female acquaintance when [he] was nineteen years old," Boagni Decl. at 54.

Plaintiffs filed this lawsuit on July 24, 2024, *see* Compl., ECF No. 1, and filed an Amended Complaint on October 28, 2024, *see* Am. Compl., ECF No. 11-1. Count One claims that the Policy Letter represents a legislative rule that does not comply with the APA's notice and comment procedures. *See* Am. Compl. ¶¶ 119–25. Count Two asserts that application of § 7511 to MMC renewal applications is not in accordance with law in violation of the APA. *See* Am. Compl. ¶¶ 126–32. Count Three alleges that the Policy Letter is arbitrary and capricious because it fails to align with similar provisions applicable to members of the armed services and civil servants. *See* Am. Compl. ¶¶ 133–35. Finally, Counts Four and Five claim that the merchant mariners have a property interest in their MMCs, as well as liberty interests in their reputations and professions, and that the Coast Guard's denials deprived them of these interests in violation of the Fifth Amendment Due Process Clause. *See* Am. Compl. ¶¶ 136–147.

On November 12, 2024, Plaintiffs moved for a temporary restraining order and preliminary injunction barring application of § 7511 to MMC renewal applications. *See* Pls.' Mot. Defendants opposed the motion, *see* Defs.' Opp'n to Pls.' Mot. for TRO and Prelim. Inj. ("Defs.' Opp'n"), ECF No. 15, and the Court held a motion hearing on November 21, 2024.

## III.  LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence

of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "The last two factors 'merge when the Government is the opposing party.'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Of course, the movant carries the burden of persua[ding]" the Court that these factors merit preliminary relief, *Fla. EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 11 (D.D.C. 2020) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)), and must do so by making a "clear showing," *Cobell*, 391 F.3d at 258. A district court must generally consider and balance each of these factors in deciding whether to issue a preliminary injunction. *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011). Where a plaintiff shows "no likelihood of success on the merits," however, the Court need not "proceed to review the other three preliminary injunction factors." *Guedes*, 920 F.3d at 10 (quoting *Arkansas Dairy Coop. Ass'n v. United States Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009)). "A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits." *Cobell*, 391 F.3d at 261. "An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief." *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 678 F. Supp. 3d 88, 99 (D.D.C. 2023) (citing *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011)).

## IV. ANALYSIS

To show entitlement to a temporary restraining order or preliminary injunction, Plaintiffs must meet the four requirements outlined above. Plaintiffs' motion boils the merits inquiry down to two assertions. The first is that § 7511 only applies to what they style as "*original*-MMCs," and not to "*renewal*-MMCs." *See* Pls.' Mot. at 14–20. The second is that denial of a

renewed MMC infringes on a property interest in violation of the Due Process Clause of the Fifth Amendment.[3]  *See id.* at 16, 19–20.  The Court concludes that these arguments are not likely to succeed on the merits and that the public interest weighs against an injunction.  Plaintiffs' claims to irreparable injury weigh only marginally in favor of an injunction.[4]

### A.  Likelihood of Success on the Merits

#### 1.  Application of 46 U.S.C. § 7511 to MMC Renewals

In support of their motion for a preliminary injunction, Plaintiffs assert that § 7511 applies only to mariners' original applications for MMCs, and not requests to renew those credentials.  *See* Pls.' Mot. at 14–15.  Because this is so, Plaintiffs continue, the Policy Letter misapplies the statute to renewal MMCs—or at least represents a legislative rule that unlawfully avoided the APA's notice and comment procedures.  *See id.* at 15–18.  Defendants respond that § 7511 prohibits the Coast Guard from renewing Plaintiffs' MMCs, *see* Defs.' Opp'n at 7–10, and that its obligations flow from the statute and not the policy letter, *see id.* at 11–12.  The Court agrees with Defendants that § 7511 applies to any issuance of a license, including renewal of an MMC.

Recall that the relevant statute requires denial of any credential that is "to be issued" to a mariner convicted of certain offenses.  46 U.S.C. § 7511(a).  Plaintiffs do not dispute that they were convicted of sex offenses included within paragraphs one and two of § 7511(a).  *See*

---

[3] Although Plaintiffs discuss liberty interests in their Amended Complaint, *see* Am. Compl. ¶¶ 142–47, they do not address those interests in their motion and reference them only in passing in reply, *see* Pls.' Reply at 3–5.

[4] Defendants assert that Plaintiff Brandon Phillips sought reconsideration following denial of his initial renewal application, *see* Defs.' Opp'n at 5, and that he has not exhausted his remedies before the agency because this request for reconsideration remains pending, *see id.* at 7. The Court excuses this failure to exhaust here because, based on the record currently before the Court, it appears certain that the Coast Guard will not reach a different conclusion.  *See Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 157 (D.C. Cir. 2006).

*generally* Pls.' Mot. They must instead contend that a renewed MMC is not a "license . . . to be issued" under Title 46, Subtitle II, Part E. 46 U.S.C. § 7511(a). Yet the Coast Guard does "issue" a renewed MMC when it grants the renewal. *See* Issue, II.9.a., Oxford English Dictionary (2024) ("To give or send (something) out, esp. authoritatively or officially."). Congress recognized this when it used the word "issued" in the subsection setting the timeframe during which a license could be renewed. 46 U.S.C. § 7106(b). So too did Congress express that a renewed license represents an entirely new credential and not merely an extension of the original license. *See id.* (stating that a renewed license is not effective until "the previously issued license expires"). Because a renewed MMC is a separate license, it must be "issued" by the Coast Guard. Finally, it is apparent that the Coast Guard must take action to issue a renewed MMC because doing so is discretionary, as evidenced by the instruction that licenses "*may* be renewed." *Id.* § 7106(a) (emphasis added); *see also* 46 C.F.R. § 10.227 (establishing requirements for renewal). Renewal thus does not occur automatically or as operation of law. For these reasons, the Court concludes that, under a natural reading of § 7511, renewed licenses are credentials "to be issued" under the statute. 46 U.S.C. § 7511(a). The Coast Guard was therefore required to deny the renewed MMCs to Plaintiffs as a result of their convictions. *See id.* (mandating that a license "*shall* be denied" (emphasis added)).

Plaintiffs' remaining claims and arguments fail to convince the Court that the Coast Guard acted unlawfully by denying their MMC renewals. Plaintiffs argue, for instance, that Congress intended 46 U.S.C. § 7704a to set "the retroactive limit for sex offense convictions . . . to be applied to merchant mariners." Pls.' Mot. at 14. Yet that statute provides a process for revocation of active merchant mariner credentials based on not only conviction, but also any legal proceeding, agency finding, or Coast Guard investigation "that determines the individual

committed sexual harassment or sexual assault." 46 U.S.C. § 7704a(c)(1)(A). The provision is fundamentally different from § 7511 because it provides for a hearing, covers a broader range of factual findings, carries a temporal limitation, and relates to suspension or revocation of active credentials. *See generally id.* § 7704a. Section 7511 is instead operative when a merchant mariner with a relevant conviction seeks to renew a credential that is set to expire. There is no indication that Congress intended the five- and ten-year temporal limitations found in § 7704a to apply to § 7511, which is an entirely separate provision serving a distinct purpose.[5]

Plaintiffs additionally argue in their motion that the Policy Letter is a legislative rule that the Coast Guard uses to evade the procedural protections found in § 7704a. Pls.' Mot. at 17. Plaintiffs' counsel conceded at the motion hearing that the Coast Guard's legal obligations flow from § 7511 and not the Policy Letter. Even in the absence of that concession, Plaintiffs' position would remain untenable. First, the record demonstrates that the Coast Guard relied on § 7511—and not any purported rule found in the Policy Letter—when it denied each Plaintiff's request to renew his MMC. *See* Ex. 2 at 40, 42, 44. Plaintiffs appear to recognize this in their briefing by stating that they "seek relief from the application of Letter 03-23, and therefore 46 U.S.C. § 7511." Pls.' Mot. at 21. Even if the Coast Guard had relied on the policy letter to make its decision, the policy letter does not itself represent a legislative rule. "Legislative rules have the 'force and effect of law' and may be promulgated only after public notice and comment." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (quoting *INS v. Chadha*, 462 U.S. 919, 986 n.19 (1983)). Yet the policy letter lacks any force and effect of law on its own,

---

[5] Plaintiffs argue that § 7511 is modeled after 10 U.S.C. § 657, "which only applies to the original enlistment of an individual into an armed service." Pls.' Mot. at 14. Plaintiffs cite no authority for these assertions, do not grapple with the significant textual differences between the two provisions, and do not account for the distinct requirement found in § 7106 for merchant mariners to renew their licenses every five years.

both disclaiming its capacity to "impose legally binding requirements on any party," *see* Policy Letter at 37, and relying entirely on the text and requirements imposed by § 7511 rather than any independent rulemaking authority, *see generally id.*  The letter is therefore at most an interpretive rule "issued by [the Coast Guard] to advise the public of the agency's construction of the statutes and rules which it administers."  *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995)); *see also* Policy Letter at 37 (asserting that "[t]his guidance represents the Coast Guard's current thinking on this topic and may assist industry, mariners, the general public, and the Coast Guard . . . in applying statutory and regulatory requirements."); 5 U.S.C. § 553(b)(A) (exempting "interpretative rules" from notice and comment rulemaking).  As such, the Policy Letter "do[es] not have the force and effect of law."  *Perez*, 757 U.S. at 97 (quoting *Shalala*, 514 U.S. at 99).

Plaintiffs also claim that denial of their MMCs is unlawful because it is "retroactive" in nature.  *See* Pls.' Mot. at 14.  According to Plaintiffs, "[c]urrently serving merchant mariners can only be subject to federal rules that have a future effect, unless Congress enacts such rule that is expressly retroactive, as it did for a suspension or revocation based on a sex offense conviction." *Id.* (citing 5 U.S.C. § 551(4)).  Plaintiffs cite the APA provision defining a "rule," in part, as "an agency statement of general or particular applicability and *future effect*."  5 U.S.C. § 551(4) (emphasis added).  Once again, however, the Coast Guard's legal obligation to deny Plaintiffs' renewal MMCs flows not from an agency rule, but from Congress's instructions in § 7511. Congress plainly intended the statute to consider prior conduct given its concern with past sex offense convictions.  To the extent that this has some retroactive effect, the statute contains "clear congressional intent favoring such a result."  *Landgraf v. USI Film Prod.*, 511 U.S. 244,

280 (1994).  In denying Plaintiffs' renewal MMCs, the Coast Guard simply followed Congress's directions.

## 2.  Due Process Interests in MMCs

Plaintiffs also contend the Coast Guard's refusal to renew their MMCs deprives them of a property interest without due process of law.  *See* Pls.' Mot. at 13, 16, 19–20.  Defendants respond that Plaintiffs lack a property interest in an MMC that has yet to be issued, *see* Defs.' Opp'n at 16, and that Plaintiffs do not show that they received insufficient process, *id.* at 17.  The Court determines that Plaintiffs do not establish a likelihood that they have a property interest in renewal of their MMCs, or that they received insufficient process.

"To prevail on a constitutional due process claim, a plaintiff first must show the existence of an interest protected by the Due Process Clause, and then must establish the government's failure to provide her with the process that she was due."  *Yancey v. Dist. Columbia*, 991 F. Supp. 2d 171, 176 (D.D.C. 2013).  "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source'" such as state or federal law. *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998)).  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *see also Crooks v. Mabus*, 845 F.3d 412, 419 (D.C. Cir. 2016) (explaining that "an individual has no 'cognizable property interest' in the renewal of a license or certification where" the agency has discretion to deny it).

Mariners generally lack a property interest in renewal of their MMCs because the Coast Guard has discretion to grant or deny those renewals.  As discussed above, the Coast Guard

"may" renew licenses for an additional period of five years, but there is no requirement that the agency do so. 46 U.S.C. § 7106(a). Nor do agency regulations establishing requirements for renewal state that the agency must renew a license. *See* 46 C.F.R. § 10.227; *see also Clifford*, 915 F. Supp. at 313 ("Plaintiff does not have a protected entitlement to an MMC because the statute and regulations grant the agency the discretion to issue or deny licenses."); *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 338 (D.C. Cir. 2011) (holding that an individual lacked a property interest in his appointment as an unaffiliated, independent pilot because the relevant regulation grants the Coast Guard discretion over his appointment). Yet Plaintiffs' claim to a property interest is even more tenuous here, as federal law *required* the Coast Guard to deny their renewal applications. The statute instructs that their credentials "shall be denied" based on their convictions. 46 U.S.C. § 7511(a). Plaintiffs cannot have a property interest in a credential the Coast Guard is prohibited from issuing to them.

Plaintiffs again elide the difference between revocation of an MMC and nonrenewal of the credential at the end of its validity. *See* 46 U.S.C. § 7106(a) (providing that a license is valid for five years). Plaintiffs claim that 46 U.S.C. § 7702(d)(1)(B) provides a property interest in an MMC. Pls.' Mot. at 20. Yet that provision applies to "suspending or revoking" a credential, 46 U.S.C. § 7702(a), not the decision to deny an application for renewal. Plaintiffs additionally cite *In re Merch. Mariners Documents Issued to Dimitratos*, 91 F. Supp. 426 (N.D. Cal. 1949), for the notion that due process protections apply to MMCs. *See* Pls.' Mot. at 19–20. But that case again considered suspension of credentials possessed by mariners "against whom charges are pending and undetermined," *see Dimitratos*, 91 F. Supp. at 428, not the Coast Guard's decision whether to renew an expiring credential. Furthermore, the court there held that the mariners were "entitled to due process before their licenses are cancelled" because federal law required

the Coast Guard to hold a hearing prior to suspension. *Id.* at 429. Neither § 7106 nor § 7511 mandates such process. Plaintiffs further cite *Jory v. United States*, 562 F. App'x 926 (11th Cir. 2014), when arguing that "Congress has provided specific administrative and judicial review procedures for the suspension and revocation of MMCs, which must be followed." Pls.' Mot. at 13. That case involved a mariner's lawsuit arising from "the U.S. Coast Guard's revocation of his merchant mariner credentials." *Jory*, 562 F. App'x at 927. The Eleventh Circuit affirmed dismissal of the action because the mariner had failed to exhaust his administrative remedies provided in 46 U.S.C. § 7702. *Id.* at 928. Again, both that case and the relevant statutory provision relate to revocation of active credentials rather than the nonrenewal of expiring credentials. *See* 46 U.S.C. § 7701(b) ("Licenses, certificates of registry, and merchant mariners' documents may be suspended or revoked for acts described in section 7703 of this title.").

Finally, even assuming that Plaintiffs have a property interest in renewal of their MMCs, they do not establish that the process they received was constitutionally deficient. *See* Pls.' Reply at 4–5. To show a procedural due process violation under the Fifth Amendment, a plaintiff must establish not only a protected interest, but also that he was deprived of that interest without the process that is due. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (discussing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Plaintiffs argue that they should have been afforded "written notice of the reasons for the action and an opportunity to contest the decision through a contested hearing." Pls.' Reply at 4. Yet the Coast Guard *did* inform Plaintiffs of the reasons why it denied their renewal requests, permitted them to file written submissions, and allowed them to contest application of § 7511 to their convictions. *See Mathews*, 424 U.S. at 343–45 (holding that written submissions may satisfy constitutional due process requirements). The record before the Court demonstrates that the Coast Guard considered Plaintiffs' MMC renewal

applications and made particularized factual findings regarding their prior convictions. *See* Ex. 2 to Pls.' Mot. at 40–45. Plaintiffs were able to request reconsideration of the decisions and then file administrative appeals. *See id.* All three Plaintiffs did challenge the initial decision and received further process. *See* Reid Decl. ¶ 9; Phillips Decl. ¶ 8; Boagni Decl. ¶ 8. Plaintiffs do not argue that their prior convictions fall outside the scope of § 7511(a), meaning that it is not clear what further process would be necessary to determine whether the Coast Guard properly applied the statute to their factual circumstances. *See Mathews*, 424 U.S. at 344 (considering the "risk of error inherent in the truthfinding process" and "[t]he potential value of an evidentiary hearing" in determining the amount of process due).[6]

In *Codd v. Velger*, for instance, the Supreme Court considered whether a police officer was entitled to further process for his dismissal based on a previous suicide attempt using his service revolver. 429 U.S. 624, 625 (1977). The Court observed that the plaintiff nowhere "asserted that the report of the apparent suicide attempt was substantially false." *Id.* at 627. "[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose," the Court reasoned, "there must be some factual dispute" to resolve. *Id.* So too have Plaintiffs here failed to demonstrate a factual dispute that further hearings might settle. *See* Pls.' Reply at 4 (arguing that a contested hearing before this Court may be required). As far as the Court can discern based on the parties' filings, the facts of Plaintiffs' convictions appear to be undisputed. The only live issue is whether the Coast Guard applied the correct law to those facts.

---

[6] Plaintiffs additionally argue that the administrative procedures outlined in § 7704a apply to the Coast Guard's denials under § 7511. *See* Pls.' Reply at 4–5. As the Court discussed above, there is no indication that Congress intended procedures governing the revocation of an active MMC to apply when the Coast Guard denies an application for renewal.

The Court thus concludes that Plaintiffs have failed to establish a likelihood of success on the merits of their claims under either the APA or the Due Process Clause. The Court could halt its analysis here, *see Guedes*, 920 F.3d at 10, but nonetheless proceeds to consider the remaining factors governing issuance of a preliminary injunction.

### B. Irreparable Harm

Plaintiffs argue that they will suffer irreparable harm because "[a]fter a break in service of a year for licensed mariners . . . , an MMC's currency expires so a former mariner seeking to reenter the merchant marine must apply for an *original*-MMC." Pls.' Mot. at 21 (citing 46 U.S.C. §§ 7106, 7302(g)). Under Plaintiffs' construction of the statutory scheme, this would then require them to apply for new MMCs rather than renewals, at which point they concede they would be ineligible for the credential under § 7511. *See id.* At the hearing, Plaintiffs additionally pointed out that they earned significantly higher salaries in the merchant marine compared to their current work. Defendants argue that Plaintiffs fail to show irreparable harm because they admit they will not suffer injury until June 2025. *See* Defs.' Opp'n at 25. This factor weighs in favor of Plaintiffs, if only slightly.

"[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. "Such injury must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Plaintiffs do not establish a likelihood of future harm or that the harm is beyond remediation by referencing the Coast Guard's requirements to renew their credentials. As the

Court explained above, Plaintiffs are ineligible to be issued MMCs regardless of whether they seek renewal of their MMCs or apply for so-called original-MMCs. The harm they foresee—ineligibility for an MMC—has already occurred. Furthermore, Plaintiffs fail to explain how this harm would be beyond remediation, given that they seek an order "[d]eclar[ing] contrary to law the Coast Guard's disapproval under 46 U.S.C. § 7511 of Plaintiffs' Merchant Mariner Credential renewal requests." Am. Compl. at 25. Were Plaintiffs to eventually prevail on the merits, it is conceivable that this Court could issue an order holding unlawful the Coast Guard's denial of their renewed MMCs. And if the Coast Guard could not apply § 7511 to Plaintiffs' applications and instead issued their renewed MMCs, Plaintiffs would not be required to start the MMC application process from the very beginning. For these reasons, Plaintiffs' asserted harms could be remedied as part of this litigation.

In addition, this anticipated harm is not particularly imminent. "Whether [the harm] is days or months away may be relevant to the imminence inquiry, but it is not itself dispositive." *Signal Peak Energy, LLC v. Haaland*, No. 24-cv-366, 2024 WL 3887386, at *8 (D.D.C. Aug. 21, 2024). Yet here, Plaintiffs assert that to maintain eligibility to renew their MMCs, "the Court would have to grant the preliminary injunction requested by the Plaintiffs not later than June 21, 2025." Pls.' Mot. at 21. Plaintiffs' asserted harm would occur seven months away, which does not indicate that it is "of such *imminence* that there is a clear and present need for equitable relief." *Mexichem*, 787 F.3d at 555. This matter can be resolved on the merits before that date.

At the Court's hearing on this motion, however, Plaintiffs explained that their inability to work as merchant mariners has resulted in a significant reduction in pay, and that at least one Plaintiff has since been unable to maintain regular employment. On the one hand, it is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas*

*Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Yet courts often reach this conclusion based

on the notion that a wrongfully discharged employee may be entitled to back pay. *See, e.g.*,

*Wisconsin Gas*, 758 F.2d at 674 (reasoning that "adequate compensatory or other corrective

relief [may] be available at a later date"); *Sampson v. Murray*, 415 U.S. 61, 90 (1974);

*Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999); *Williams v.

Walsh*, 619 F. Supp. 3d 48, 63–64 (D.D.C. 2022). Some courts in this Circuit have thus

concluded that unrecoverable losses in wages may represent irreparable harm when they are

"sufficiently severe to warrant emergency relief." *Save Jobs USA v. U.S. Dep't of Homeland

Sec.*, 105 F. Supp. 3d 108, 115 (D.D.C. 2015); *see also American Federation of Government

Employees, AFL–CIO v. United States*, 104 F. Supp. 2d 58, 76 (D.D.C. 2000) (finding

"irreparable harm" where the plaintiffs were likely to be prevented from recovering damages by

federal back pay statute). Plaintiffs here have not firmly established that they lack a remedy for

their alleged harms, although none is immediately apparent given the federal government's

sovereign immunity. Nor have Plaintiffs provided any documentation to the Court to show that

their financial positions are "sufficiently severe." *Save Jobs USA*, 105 F. Supp. 3d at 115; *see

also Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017) (explaining that

"[t]he standard for irreparable harm is particularly high in the D.C. Circuit" and that "[p]laintiffs

have the 'considerable burden' of proving that their purported injuries are 'certain, great and

actual—not theoretical—and imminent.'" (quoting *Power Mobility Coal. v. Leavitt*, 404 F. Supp.

2d 190, 204 (D.D.C. 2005))). The Court will nonetheless conclude that Plaintiffs have

established at least some irreparable harm resulting from non-renewal of their MMCs due to

dramatically decreased wages, and that this factor weighs somewhat in their favor.

### C.  Balance of the Equities and the Public Interest

Plaintiffs contend that the equities weigh in their favor and that an injunction is in the public interest because they request "to resume their *renewal*-MMC status and continue working" during the pendency of this lawsuit.  Pls.' Mot. at 22.  Plaintiffs also argue that it is in the public interest to "hold[] the Coast Guard to account for its failure to implement" the statutes properly.  *Id.* at 22–23.  Plaintiffs additionally argue that the balance of the equities weighs in their favor because the Coast Guard's interpretation of § 7511, which applies to merchant mariners, differs from its interpretation of the similar provision in 10 U.S.C. § 657, which prohibits enlistment in the armed forces of individuals convicted of certain sex offenses.  *See id.* at 23–26.  Defendants argue that the Court should defer to Congress's evaluation of the public interest in "protect[ing] the merchant marine from sexual offenders."  Defs.' Opp'n at 26.

The Court concludes that the public interest weighs against enjoining the application of § 7511 in the face of Congress's recent legislation to address sexual assault within the Merchant Marine.  The Court finds that the passage of § 7511 and § 7704a in 2022 represented Congress's judgment that reducing the number of licensed merchant mariners with sex offense convictions was in the public interest.  *See* NDAA §§ 11601–11, 136 Stat. 4145–56.  In considering the legislation, the United States House Committee on Transportation and Infrastructure responded to particular reports of sexual assault, heard from victims and advocacy groups, "found each account of sexual abuse disturbing and disheartening," and resolved that "[e]very mariner deserves to feel safe while at sea."  H.R. Rep. No. 117-282, at 43.  The Court is loath to second guess Congress's evaluation of the public interest in denying MMCs to individuals convicted of sex offenses.  The public interest Plaintiffs advance—which boils down to the interest in enforcing a correct construction of the law—does not convince the Court otherwise.  This is

particularly so given that Plaintiffs do not convincingly argue that the Coast Guard applied the law incorrectly.

Finally, Plaintiffs' comparison of § 7511 to 10 U.S.C. § 657 fails to demonstrate that the balance of the equities tilts toward them.  Plaintiffs offer no authority interpreting § 657 or demonstrating that Congress intended the two provisions to be interpreted in tandem.  Plaintiffs argue that the Coast Guard's application of the provisions to merchant mariners and Coast Guardsmen are inequitable because "[a] uniformed member of the Coast Guard convicted of a sex offense before entering service can be subject to a separation proceeding, but removal from service is not automatic and the adjudicating officials can recommend retention of this individual in the military, who would also be able to reenlist later for additional continued service."  Pls.' Mot. at 24–25.[7]  The manual discussing separations from Coast Guard service indicates that enlisted members convicted of certain sex offenses before or during service "*will* be processed for separation."  Military Separations, COMDTINST 1000.4C at 2-42 (Aug. 2024), at https://perma.cc/RS69-TFKY (emphasis added).  Another manual bars enlistment or reenlistment for individuals who committed serious offenses, including those processed for separation for a sex offense conviction.  Enlistments, Evaluations, and Advancements at 1-4 to 1-5, COMDTINST M1000.2C (Jan. 2020), at https://perma.cc/WAF4-LYA4.  Although service members may generally overcome eligibility shortfalls when "an appeal is approved by [the] Commander," *id.* at 1-4, there is no indication that an individual convicted of a sex offense may do so in light of Congress's clear prohibition in § 657, as well as the Commandant's instruction

---

[7] Plaintiffs do not include the relevant manual portions as an exhibit.  Nonetheless, "[a] court may take judicial notice of information posted on official public websites of government agencies."  *Arabzada v. Donis*, No. 23-cv-655, 2024 WL 1175802, at *3 (D.D.C. Mar. 19, 2024) (citing *Devani v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-1932, 2023 WL 2913645, at *3 n.1 (D.D.C. Apr. 12, 2023)).

requiring separation for such individuals.  Plaintiffs provide no evidence that the Coast Guard treats merchant mariners and Coast Guardsmen differently in practice and advances no other argument as to why the equities weigh in their favor.

### D.  Balancing the Factors

Based on the foregoing analysis, the Court concludes that Plaintiffs are not entitled to a preliminary injunction barring application of § 7511 and the Policy Letter to their applications for renewed MMCs.  Plaintiffs have not demonstrated a likelihood of success on the merits, and neither the public interest nor the equities weigh in their favor.  Plaintiffs' marginal showing of irreparable harm is insufficient to support an injunction while this case proceeds.

### V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 27, 2024                                    RUDOLPH CONTRERAS
                                                            United States District Judge